Declan Flight, Inc., Wright Rutter Aviation, LLC v. Textron Morning, and may it please the Court. Michael Schenkman for Plaintiff Appellants, Declan Flight, and Wright Rutter Aviation. This is a suit arising from an appeal from a diversity action among U.S. companies involving U.S. businesses, actions that took place in the United States with U.S. witnesses and U.S. documentary evidence. The District Court committed an eerie error by fashioning federal common law to give defendants the benefit of a contract in Slovenia to which they were not a party and that contained a forum selection clause that would give them the benefit of that contract and a Slovenian forum. We can look at this from at least three different ways. First, the cleanest eerie analysis. There is no general federal common law and it was not available in this area for that purpose. The 11th Circuit panel in Wiley created the distinction, explained the distinction between what it called applicability and enforceability. Enforceability by the federal courts is, of course, a matter of federal law, but the applicability, the question of who is bound by and who benefits from the contract must be a question of state law. No common law in the federal system is available for that. The Fereccio decision in the Sixth Circuit So just to be clear, has our court definitively taken a position on what you just said? Judge Voodoo, I mean, Wiley, I think, noted that distinction. I think eerie is what creates the, I mean, the 11th Circuit has not disputed the notion that there is no federal general common law. And the problem that appellees run into here is that they have to find a way to get some. That's expressly what the district court said it was doing, applying federal common law to do this. The eerie doesn't answer this specific question, though. And so I think the answer to Judge Voodoo's question has to be that, no, we haven't definitively decided in a published opinion what the Sixth Circuit has ultimately decided and what others seem to have. I do have a question, though. Has the Supreme Court decided any analogous or similar cases for whether equitable estoppel is a general, I'm sorry, is a federal common law issue or is an issue of substantive law that would then require an eerie analysis? I think the Supreme Court's certainly been concerned with whether questions of forum selection clause are matters where state law applies or federal law applies. In what context? In the arbitration context? Is that where it has brought that up? No, I think also in the venue transfer context is mostly where it comes up, which is quite different. Appellees rely on Stewart v. Rico, a 1988 Supreme Court decision. They discuss in detail the Eleventh Circuit opinion on that, and it was indeed affirmed by the Supreme Court but expressly on different reasoning. And what the Supreme Court's opinion says is that it's important there that the court was interpreting a federal statute, 1404, the venue transfer clause, and therefore had some greater flexibility to fashion federal common law. Have we in the Supreme Court applied substantive law to unequitable estoppel principles in the arbitration context? Do you know that? I'm not familiar one way or the other. Let's assume for the moment we have and the Supreme Court has. What would that tell us about a form selection provision in a contract? So I think even if you could get to equitable estoppel or some equitable principle here, it is not permitted by virtue of the nature of the pleading. That is, the well-pleaded allegations are— No, let me—maybe that question's not clear. If we had said in the arbitration context that the concept of equitable estoppel is an application principle that requires—is a substantive law issue, not a federal common law issue, and requires an eerie analysis, what would that tell us with whether a form selection clause in a contract is for the same exact question? I think as in many cases, that would also be true here, although in addition, in an arbitration example, there's the background of the Federal Arbitration Act. There is, but certainly a form selection clause—an arbitration clause is a kind of or a species of a form selection clause, is it not? I agree, Judge Locke. And so if the Supreme Court has said that it's a substantive law issue for eerie purposes, and I'm talking about whether equitable estoppel applies or not, and we've said it, how do we then analogize, or should we use that analogy here to be able to decide whether it's also a substantive law issue? Yeah, I mean, I think that's right, that it is a substantive law issue, and you have to look to Florida law, which in turn looks to Slovenian law, and the Slovenian law we've provided. Right, so let's talk about that piece, because your opposing counsel argues with you on that. So what they say is that even if, for some reason, we have to look at Florida substantive law, we then have to apply choice of law principles, and according to your opposing counsel, that still gets us right back to Florida law, which allows for equitable estoppel. And so where—tell me why they don't have that right and you do. Right. Of course, the district court did not decide that, but Florida law says, look to the law of the contract, the Lex Loci contractus principle, that's prime insurance syndicate v. NBJ hand-lead trucking, and indeed, this contract— Does Lex Loci, though, have a provision at the end of it? We look to Lex Loci, the location of the contract. Is there an unless to that? Because I thought it's unless the contract has a forms election clause, right? In other words, the general rule in Florida is Lex Loci, but doesn't Florida also recognize that if the parties have contracted for a specific law to apply, that that is what prevails? And indeed, the parties contracted for Slovenian law to apply. Do I have Florida law wrong? Am I missing something there? I don't think I'm fighting you on the principle of it. Okay. All right. All right. And then the one last piece to this, I think, is what evidence is there about what Slovenian law is? Because I think there is some dispute about whether Slovenian law allows or certainly was competing expert affidavits on this, and the district court made some findings on that, but maybe not on this in particular. How are we to decide what Slovenian law is with regard to equitable estoppel? Which is what our ultimate question would come down to. Rule 44.1 of the Rules of Civil Procedure guides that, and it is complicated and challenging. I'd refer the court to, there's an excellent FJC guide by Sarah Olsidan that points to some of the resources and problems with doing that, but this court reviews that determination de novo by the district court on- So we can make the call ourselves? You can, yes. But what you have here is the affidavit from our expert that explains that a non-signatory would not benefit under Slovenian law. You have the translation of the opinion that's attached to our brief that is reasonably clear about why that's the case, and it makes sense, because the tortious interference allegations here are really distinct from any breach of contract claim that's taking place under the contract in Slovenia. That's an important principle underlying the whole case. So I think that the court has what it needs to make this- So tell me the best part of the affidavit. So are you looking at the portion which says that the only way a non-signatory can enforce is to succeed to the original signatory's rights and obligations? Is that the portion of the expert's affidavit you're looking at? I think that's correct. There's also the explanation of the way that this suit would be viewed under Slovenian law, which is as anti-competitive behavior, a separate kind of claim that's not part of the contract, and it's just an entirely different suit between different parties than what that contract covers, as explained by the expert. Can we talk about personal jurisdiction for a second? And so I'm referring to Claim 3 right now. So my question is, do we have to decide the personal jurisdiction issue if I believe that the complaint didn't state a claim and or believe it was a shotgun pleading? No, but of course, I think that in the first instance on the 12B6 issue, it was a well-pleaded complaint. I know you believe that. I'm not asking you to concede those points. I'm merely asking, can I skip over personal jurisdiction and look to those other issues if I was inclined to believe it? Yes. The reasons the district court described. I'd say, too, that, and we've described this in our briefs, of course, there's some history behind the second amended complaint. The second amended complaint is the only operative complaint. Everything else was a nullity, and so the shotgun pleading discussion was really not a basis of the district judge's decision, and I don't think is presented on the appeal here. I'm not sure I agree with that. You may be right on the substance that it's not a shotgun pleading, but I'm not sure. I don't see it as an alternative holding or alternative ruling of some kind, but I understand your argument on that. So let's talk about personal jurisdiction for a second. Tell me why you think the district court got that wrong. Sorry, why you think the district court got that right, I apologize. Right, right. This is, of course, a busy district judge with a number of points of the opinion, so with respect to what was decided below, and I think the judge got the bottom line right. Let me walk through the analysis in the way that it was. Doesn't that indicate to us that we should send it back if we are to decide on that? Because neither of you defend the rationale of his decision, and I value what you've just said. You're right. I don't blame anybody. I get stuff wrong. We all get stuff wrong. But if neither side is going to defend what he did, and frankly, what he did wasn't even really argued to him, why not just send it back for him to do the work? Why would we then go through each step of the personal jurisdiction analysis, which requires a lot. You guys spent a lot of ink on that. There's a whole other set of briefing on it. Yeah, I mean, Judge, I suppose it is certainly possible to do that, but I think that the court has what it needs to decide that question here. That personal jurisdiction is pretty clear. The cleanest way to do it is under a slightly different provision of the Florida long-arm statute than what the district court decided the case on, but I just don't think it benefits anyone to kick it back to the district court, given the pretty clean case of what's presented. There's a contract between Wright Rutter and Mesa Airlines, which is indisputable in Florida. The well-pleaded allegations are about interference with that contract, knowing actions into the Florida statute, also complying, so that would be a Florida long-arm statute 48.193182, committing a tortious act within the state. If the tortious acts are interfering with the contract, why were those acts not committed in Arizona, Slovenia, Kansas, and Rhode Island? Because the specific contract with Mesa to sell it airplanes was executed and to be performed by Wright Rutter. The delivery was supposed to be in Florida, but the contract was clearly made not in Florida. It was made elsewhere, between parties that aren't Florida parties. Well, Wright Rutter is a Florida party, and... I know Wright Rutter is, but if the tortious interference was, I called Mesa and told them to cancel, or Textron, which is somewhere else, called them to cancel, and called Pipistrel and told them to stop delivering. Those are all acts, which are, those are the interference. Those are all acts that had to have happened by necessity, not in Florida, right? Well, the channel for Pipistrel to sell its airplanes, the exclusive distribution was Wright Rutter at its airfield in Citrus County. That's where the contract was formed with Mesa. Textron E-Aviation, based in Kansas and incorporated in Delaware, came to Florida in a number of  meetings, the 2022 Orlando conference. There's no doubt that they have some contacts with Florida. I don't think that's disputed, but the question is, did the tortious interference, the ultimate, again, the ultimate act is the contract. That had to have happened at corporate headquarters of these various places that aren't your client, because your client was cut out of it. Well, because of the particular timing of what took place, there were parallel negotiations going on between Textron E-Aviation and Mesa and Textron E-Aviation and our client. So, of course, everything was happening in corporate offices, but back to the Florida long-arm statute analysis, where the emails were sent from is not as relevant as where they were intended to cause the harm and the knowledge of the contract. Thank you, counsel. Thank you. May it please the court. Mitchell Carlin from Gibson, Dun & Crutcher. Counsel for the Textron defendants below and the cross-appellants here. If I could start with the question of what the 11th Circuit has previously done on this issue. The major disagreement, I think, between my friend and I is whether this case involves interpretation or scope of the form selection clauses or merely their enforcement. That's a distinction that Stewart actually doesn't recognize, but Firexo tries to draw a lot of attention to. Why is it not an applicability issue, whether this applies to a non-signatory? Why is that not an applicability? We are not saying that the contracts apply to us. In other words, if we looked in the mirror and the lawsuit was different, if someone were saying that we were being sued and we could be forced against our will to go to There's this contract out there that you didn't sign, but we're going to enforce it against you anyway. I think the case law suggests that that would not happen, that could not happen. But the question before this court, I respectfully suggest, is simply whether these plaintiffs are stopped from denying the relevance and enforceability of the contracts that they negotiated and voluntarily signed. You heard me ask these questions of your opposing counsel, but in the arbitration context, both we and the Supreme Court have suggested that that question is a substantive law question, not a federal common law question. I know the cases to which Your Honor is referring, and I don't know that they are binding here, but I agree with you. They are certainly something we should all be thinking about. But this court, not just in Stewart, but in a handful of other cases that we've cited in our briefs, and a lot of lower courts in this circuit following your guidance, have ruled, yes, expressly and unambiguously, that the question of enforcement of a forum selection clause is, in a diversity case, is a question of federal common law, and that the general rule is no, non-signatories don't get to enforce them against signatories, except in certain special circumstances, one of which, everybody agrees, is estoppel. And that's all the district court did here. Now, I would respectfully point this court, I'm trying to respond to the question that Judge Aburo asked, to the, and I may not be pronouncing some of these parties' names correctly, and I apologize, but the Acadie case from this court in 2024, the Bahamas Sales case from this court in 2012, and the Usme case, which was just decided quite recently for- There's no doubt that we have said that enforcement is a federal common law issue. There's no doubt about that. That's I think the question for the, certainly the threshold question. I just don't know that any of those cases dealt with the issue of equitable estoppel, and if that changes the analysis of whether it's an enforcement question, or whether we're applying something different than enforcement, whether you call it applicability or something else. Respectfully, Judge, what I think is significant here is the large landscape of issues on which these parties actually do agree. Everybody agrees, let's take a hypothetical case of a lawsuit by these plaintiffs against Pipistrelle, their contract counterparty, in Florida. Let's assume that didn't happen, but let's pretend that happened. There would be no debate, I think, in this case, based on the briefs that I've seen from our opponent here, that the form selection clauses are valid, that they are broad enough to cover the claims in this case, and that they are mandatory and not permissive. Hunter, everything you've said is right. There's no doubt that between the two of them, that's an enforcement issue between signatory parties, but we're dealing with something different than that. Well, in the sense that we're the defendant, yes, but I'm not sure what- That's everything, isn't it? Right, right. Respectfully, Judge, the judges, I don't know what question of contractual interpretation is raised here. It's just whether we can enforce these clauses, again, in this case. Through a separate doctrine, and the question is whether that doctrine is independent and separate from the enforcement question that you just raised, which is between party signatory against party signatory of a provision that everyone agrees is valid and applicable to them. Judge, I think the Uzme case definitely stands for that proposition, and I think Bahama Sales stands for that proposition. Let's assume for the moment I disagree with you on this particular point, because you make lots of other alternative points, and I want to explore some of them. One of them is, okay, it's substantive, and on the Erie analysis, ultimately it ends up in accordance to Florida law and the same exact law, and so there's no Erie problem here. Tell me how you get there. I'm at a disadvantage, given who is on this panel and discussing substantive- Well, one or two of us knows a little about Florida law, but not everything. One of us knows everything, and then there's me. Respectfully- I've forgotten it all. Don't worry about it. We believe, we read the Florida cases to mean that the Lex Loci doctrine only is triggered if you know where the contract was executed. There is nothing in this record about where any of these contracts were executed. Doesn't the principle of law that both of you cite state the general rule is Lex Loci unless there is a provision identifying the law? I'm paraphrasing. I'm not quoting. I can quote if you want, but- No, I know exactly what you're referring to, Judge, but I respectfully think that's a second step. I don't think the general rule here is Lex Loci. The general rule is Lex Loci if we know where the contracts were executed, and we- What do you think the choice of law rule that we should look at is? Well, Florida's ... If under ERIE, the question raised by this case is one that should be decided under state and not federal law, which I'm not conceding- I know that. I know that. I'm trying to answer your question. Then the forum state is Florida. We would use the conflicts of laws rules of Florida. What would that be? That's what I'm asking. What's the choice of law rule that we look at in Florida that you ... You're saying Lex Loci doesn't apply because we don't know where this contract was actually signed. I'm accepting that premise for the moment. What rule do we look at? We've cited cases in our briefs, Judge. I'm sorry. I'm looking for the name. What your brief suggests is that, well, in Florida, equitable estoppel is substantive, and so that's the substantive law we look at, and so that's it. I never really got the answer from your brief on what rule that you want us to apply for the choice of law, because that's the question we have to ask under Florida law. The question would not be treated as substantive under Florida's choice of law rules. I hear, Your Honor, that you're not necessarily endorsing that view, but if under Erie, we have to let the state law decide it, then the cases we've cited, Your Honor, are to the effect that the Florida court would treat this kind of the same way Stewart does. It's a question of venue and a question of procedure. My colleague is helping me here. The case we want to bring to your attention is Golden Palm Hospital. This is on page 33 of our brief, versus Stearns Bank, which is not a Supreme Court case, and the quote we give, Your Honors, is, whether the forum selection clause is valid and enforceable is a procedural issue that must be determined. I have it here. I even have it bracketed on my notes here, but that's not a choice of law rule. I know you say it's a choice of law clause, but that's not really a choice of law rule. That's whether it's valid under Florida law, but the choice of law question is, which law do we apply? Because that's the first question we have to ask. Once we know that we get to Florida, then we have to ask, whose substantive law do we  You're telling me Lex Loci doesn't apply. I'm accepting that premise at the moment. What rule do we look at then? The circularity that you and I are exploring, Judge, is that Florida would not treat this as a substantive question. And that's what this case is cited. You may be right if this case originated in Florida, but that's not the question we have to ask. The question we have to ask first is, and I tend to agree with you, but the question we have to ask is, whose law do we apply? And once we answer that, then we can look at how Florida treats this and how it looks at it and all of that. If I can harken back to Stuart for a moment, the distinction that Firexo has introduced into the debate nationwide now about whether there's some slicing of the bologna between enforcement, interpretation, scope, is not something that anybody was talking about at the time Stuart was decided. Stuart takes the position, and I understand the Supreme Court affirmed on other grounds, but it was an eight to five en banc opinion that is entitled to some significant deference here. At the time Stuart was decided, all questions in a diversity case with respect to the meaning and enforceability and applicability of a forum selection clause were to be decided under federal common law. No court that I am aware of, no decision that I am aware of from this court or any district court in this circuit, before or after Firexo, draws the distinction that Firexo draws. And I would respectfully suggest this is not the case that this panel ought to be using as a vehicle for rewriting several decades of Eleventh Circuit law. I want to talk to you, because you're running a little over on time, I want to talk about your personal jurisdiction argument and more generally your argument as to Claim 3 and your cross appeal. So, first of all, same question I asked your opposing counsel, do we have to decide this, the personal jurisdiction issue? No. So you agree with that? I do. Okay. If I may? Yeah. The reason being that in order for there to be personal jurisdiction, I think we've discussed this in a footnote in our briefs, there has to be a claim. And so we don't think it is necessary, somebody, either you or my friend here, referred to it as skipping over, it's not skipping over anything. You're entitled to decide these issues in any sequence you wish. If your honors agree with that, respectfully, I hope you will reach the personal jurisdiction issue if you find that the claim, it's a claim. All right. So assume for the moment that we choose to decide the personal jurisdiction issue first. And you heard me have this conversation with your opposing counsel, neither of you defend what the district court did here and that's not an aspersion on the district court in any way, it's just no one defends it and I'm not sure that it's right. Once we all agree to that, and it seems like at least you two do, why not just send it Well, I think I tried to answer that in response to your prior question, it's not, I'm hoping you're going to conclude that the district court was correct in stating that the third claim for relief does not state a claim, in which case the personal jurisdiction issue is accepted. Like I said, let's say we choose to decide. If we choose not to do that, we're not opposed to having the matter go back, Judge. Okay. All right. So tell me why you think the district court, I know not why they got it wrong, but why you think there is no personal jurisdiction here? Because there, remember the third claim for relief is just on behalf of one of the plaintiffs, right, Rutter? And there's no tort that was committed in the state of Florida and the district court, I'm sorry, we're on personal jurisdiction, so I'm not going to talk about personal, district court. There's no tort that was committed in the state of Florida. But I heard Your Honor refer to Walden as an old case. I guess I'm an old guy then, because I like Walden, I've been using it all my career. Older in the scheme of what we're doing. I wasn't an aspersion on you or me, counsel. But we think Walden's good law, and you can't bring us into Florida. There's no allegation that we're subject to general jurisdiction in Florida. It's just, it would have to be in connection with this alleged tort. We didn't do anything here, and nobody did anything. Well, they're saying that some stuff was done here. Now, whether that was the tort is, I think, a separate question. But they say, for example, there was, I think, a conference in Orlando at which certain instructions were given from one entity to another entity to not do business with the third entity. And so something happened here, it isn't nothing. I think the question is, is what happened here the relevant thing that we look at? There is no allegation in the complaint that Pipistrelle was instructed to do something bad in Florida by us. Maybe if they went to trial. And that's the relevant, that's the relevant. I think that's the relevant question, yes. Yeah. And your honor gave a litany of jurisdictions that was in my notes, too. Those are all the places that are discussed in the complaint. May I take one? I only have 25 seconds. Can I just say one thing about forum nonconvenience? Because that was the grounds for the dismissal. Forum nonconvenience is a matter of federal common law, and I don't think there's any dispute about that. And even if there had never been a forum selection clause in this case, this cries out for forum nonconvenience dismissal. The court that adjudicates the torts against us in counts one and two is going to have to decide whether there was a breach of contract under Slovenian law. And that decision should not be made respectfully by anyone other than a Slovenian court and should not be made twice. Because presumably there's at some point going to be a claim against Pipistrelle for breach of contract, and that's going to be in Slovenia. And the district court did talk about the risk of inconsistent judgments, which is an element, an important element of a forum non-analysis. Thank you, counsel. Thank you, Judge. Taking my water away. Can I have you down as two minutes? Is it two or three? I think two minutes is sufficient. Okay. Thank you. And what I reserved. I just want to mention a couple of points very briefly. On the federal common law issue, it might be helpful also to look at Justice Scalia's dissenting opinion in Shepard, where he describes this federal common law issue. He would not have allowed the fact of the federal venue transfer statute to get in the way of saying it really ought to be state law and everything. That's effectively what Judge Larson was doing in her concurrence in the Ferrexo opinion, which simplifies a lot of the other equitable analysis from the Sixth Circuit into, I think, what's relevant here. The forum non-convenience issue really does merge with the first point on the appeal since under Atlantic Marine, it is the way of enforcing a forum selection clause, which we don't have. But I just highlight the fresh results case, which says it would have been error for the district court not to consider the public factors, even in the case where there was a valid forum selection clause, which there's not. And lastly, on the Florida personal jurisdiction point, Judge Luck, to your question, I did recheck the contract, which is in volume six of the appendix. Delivery was at Florida. I think I said that when we were having our conversation. I'm sorry if I'm... The question is the tort, which is the interference with the contract. That isn't delivery. I mean, that happens way earlier. In fact, it interferes with delivery, right? I mean, one could say to that extent that it happens everywhere in all of these different places of the multi-state contract. And this is really the case of a multi-national, large, publicly traded corporation saying they don't want that claim heard in any state, as opposed to really about Florida. If there's a preference to have it somewhere else, you know, if they're incorporated in Delaware, if they want it in Delaware, but the claim has to be able to be brought somewhere. And we thought Florida was the proper place for that in the long-arm statute and the constitutional provisions all supported that. Thank you very much. Thank you. Thank you both. We're adjourned for the day. Thank you.  Thank you.